IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMUNICATIONS WORKERS<br>OF AMERICA SAVINGS AND<br>RETIREMENT TRUST<br>501 Third Street, N.W., Suite 800<br>Washington, DC 20001<br><br>and<br><br>Barbara Easterling, Trustee<br>Communications Workers of America<br>Savings and Retirement Trust<br>501 Third Street, N.W., Suite 800<br>Washington, DC 20001<br><br>and<br><br>Morton Bahr, Trustee<br>Communications Workers of America<br>Savings and Retirement Trust<br>501 Third Street, N.W., Suite 800<br>Washington, DC 20001<br><br>and<br><br>John Polmonari, Trustee<br>Communications Workers of America<br>Savings and Retirement Trust<br>501 Third Street, N.W., Suite 501<br>Washington, DC 20001,<br><br>            Plaintiffs,<br><br>v.<br><br>RELIASTAR LIFE INSURANCE CO.<br>20 Washington Avenue South<br>Minneapolis, MN 55401<br><br>  Serve:  R. Glenn Hilliard<br>            Chairman and CEO<br>            ING Americas<br>            5780 Powers Ferry Rd.<br>            Atlanta, GA 30327-4390 | FILED<br>OCT - 5 2001<br><br>CASE NUMBER 1:01CV02098<br>JUDGE: Richard W. Roberts<br>DECK TYPE: Labor/ERISA (non-employment)<br>DATE STAMP: 10/05/2001 |

|                              |   |
|------------------------------|---|
| and                          | ) |
|                              | ) |
| **ING GROEP N.V.**           | ) |
| **d/b/a ING GROUP**          | ) |
|   P.O. Box 810     | ) |
|   1000 AV Amsterdam| ) |
|   The Netherlands  | ) |
|                              | ) |
|   <u>Serve</u>: R. Glenn Hilliard | ) |
|       Chairman and CEO | ) |
|       ING Americas | ) |
|       5780 Powers Ferry Rd. | ) |
|       Atlanta, GA 30327-4390 | ) |
|                              | ) |
| **Defendants.**              | ) |

## COMPLAINT

**(For Declaratory Judgment and to Enjoin
Breach of ERISA Fiduciary Obligations)**

*The Parties and Jurisidiction*

1.   Plaintiff Communications Workers of America Savings and Retirement Trust is a multi-employer joint labor-management pension fund established pursuant to Section 302(c) of the Labor Management Relations Act (29 U.S.C. § 186(c)). The Trust provides pension, retirement and related benefits to the eligible employees of employers who contribute to the Trust pursuant to various collective bargaining agreements with local unions affiliated with the Communications Workers of America. The plan of benefits ("Plan") established by the Trust is principally in the form of a cash or deferred arrangement pursuant to Section 401(k) of the Internal Revenue Code (26 U.S.C. § 401(k)). The Plan also permits profit sharing contributions and/or matching contributions from employers who have negotiated to make such contributions on behalf of their employees. The Trust maintains its offices in, and is administered in, the District of Columbia.

Plaintiffs Barbara Easterling, Morton Bahr, and John Polmonari are Trustees of the Trust. The Trust has approximately 5,000 participants.

2.      Defendant ReliaStar Life Insurance Company ("ReliaStar") is or was a corporation organized under the laws of the State of Minnesota, with its principal place of business in Minneapolis, Minnesota.

3.      Defendant ING Groep N.V. ("ING Group") is a corporation organized under the laws of the Kingdom of the Netherlands, with its principal place of business in Amsterdam, the Netherlands.  ING Group, which does business in the United States using the name ING Americas, is the corporate parent or successor-in-interest of ReliaStar. The headquarters of ING Group's North American operations are located in Atlanta, Georgia.

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132.

### *Claim for Relief*

5.      Plaintiffs repeat the allegations of paragraphs 1 through 4 above and incorporate them herein by reference.

6.      On or about January 12, 1996, the Trust entered into a written agreement with KPMG Peat Marwick (the "Original Agreement"), pursuant to which KPMG Peat Marwick provided certain administrative services to the Trust, including record keeping and allocation of assets into plan investment vehicles in which Plan participants could invest their accounts.

7.      On or about September 1, 1998, ReliaStar became the successor-in-interest to KPMG Peat Marwick and continued to provide the same administrative services to the Trust. On or about September 28, 1998, ReliaStar wrote to the Trust informing it that ReliaStar was assuming the

contract of KPMG Peat Marwick with the understanding that new agreements would be in place by January 1, 1999, or that either party would be entitled to elect to terminate the agreement.

8. In 1999 and 2000, ReliaStar sent the Trust drafts of proposed new contract documents that ReliaStar wanted the Trust to consider signing.

9. Certain drafts included a provision under which the Trust would be liable for a substantial "surrender charge" if the Trust were to revoke the contract.

10. The Trust specifically informed ReliaStar that it would not agree to that proposed term.

11. The parties never signed any new contract documents.

12. On or about October 30, 2000, ReliaStar was advised that another employee benefit fund would be combining with, and ultimately merging into, the Trust. ReliaStar was asked to submit a proposal for administration of the combined funds and it did so through a corporate affiliate. ReliaStar was advised that proposals were also being sought from other companies. At that time, ReliaStar did not raise any objection to the bidding process or assert that the Trust would be obligated by contract to pay any surrender charge if it were to select a different company to provide services that ReliaStar had been providing.

13. On or about July 20, 2001, the Trust informed Defendants that it had selected a new service provider and that, effective in the near future, the Trust would no longer require Defendants' services.

14. By letter dated August 10, 2001, Defendants asserted that the Trust is contractually liable for a surrender charge of approximately $1,000,000. The letter further stated that Defendants would seek to enforce their claimed contract right by unilaterally deducting the surrender charge

prior to transferring Plan assets to the successor provider of administrative services chosen by the Trustees.

15. The Original Agreement does not provide for a surrender charge.

16. The Original Agreement has never been modified in writing.

17. The Trust has never agreed to be liable for a surrender charge under any circumstances.

18. By letter to Defendants dated August 20, 2001, the Trust denied liability for any surrender charge and advised Defendants that withholding the claimed surrender charge would be a prohibited transaction under ERISA. Thus, there is an actual controversy between Plaintiffs and Defendants.

19. By letter dated August 27, 2001, Defendants reiterated their contention that the Trust is liable for a surrender charge and stated that they would withhold Trust assets in an amount equal to the claimed charge.

20. Defendants, as service providers to the Trust, are parties in interest pursuant to Section 3(14) of ERISA, 29 U.S.C. § 1002(14).

21. If Defendants unilaterally deduct the alleged contract surrender charge prior to transferring Trust assets to the successor service provider chosen by the Trustees, they will become fiduciaries of the Trust within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21), because of their exercise of authority or control regarding disposition of the Trust's assets.

22. Section 406(a)(1)(D) of ERISA, 29 U.S.C. § 1106(a)(1)(D), provides:

> (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect —

\* \* \*

   (D) transfer to, or use by or for the benefit of a party

   in interest, of any assets of the plan . . . .

23.   Section 406(b)(1) of ERISA, 29 U.S.C. § 1106(b)(1), provides:

   A fiduciary with respect to a plan shall not —

   deal with the assets of the plan in his own interest or for his own

   account . . . .

24.   If Defendants unilaterally deduct the alleged contract surrender charge prior to transferring Trust assets to the successor service provider chosen by the Trustees, they will violate section 406(a)(1)(D) and (b)(1) of ERISA by causing the Trust to transfer assets for the benefit of a party in interest and by dealing with the assets of the Trust in their own interest.

   WHEREFORE, Plaintiffs respectfully pray that this Court grant the following relief:

1.   Declare that, if Defendants unilaterally deduct the alleged contract surrender charge prior to transferring Trust assets to the successor service provider chosen by the Trustees, they will violate section 406(a)(1)(D) and (b)(1) of ERISA by causing the Trust to transfer assets for the benefit of a party in interest and by dealing with the assets of the Trust in their own interest;

2.   Enjoin Defendants from withholding any Trust assets from the new service provider chosen by the Trustees;

3.   Award Plaintiffs the reasonable costs, expenses, and attorneys' fees incurred by them in prosecuting this action; and

4.   Grant Plaintiffs such further relief as is just and proper.

Respectfully submitted,

*Marc Tenenbaum*

Thomas J. Hart (D.C. Bar No. 165647)
Marc A. Tenenbaum (D.C. Bar No. 463150)
Slevin & Hart, P.C.
1625 Massachusetts Ave., NW, Suite 450
Washington, D.C. 20036
(202) 797-8700

Counsel for Plaintiffs
COMMUNICATIONS WORKERS OF AMERICA SAVINGS AND RETIREMENT TRUST AND ITS TRUSTEES, BARBARA EASTERLING, MORTON BAHR, AND JOHN POLMONARI

Dated: October 3, 2001

H:\Users\TJH\842\ReliaStar\district court complaint - mat.wpd